<u>NOT FOR PUBLICATION</u>

UNITED STATE DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| REVERA INC., | Civil Action No. 12-05051 (SDW) |
| Plaintiff, | |
| v. | **OPINION** |
| STUART H. LINDEMAN, CARE ONE, LLC, CARE ONE MANAGEMENT, LLC and CARE ONE MANAGEMENT, INC., | April 29, 2015 |
| Defendants. | |

**WIGENTON**, District Judge.

Before this Court are Defendants Stuart Lindeman ("Lindeman"), Care One LLC, Care One Management, LLC, and Care One Management, Inc. ("Care One Defendants") (collectively with Lindeman, "Defendants") motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Motions").

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. These Motions are decided without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons discussed below, this Court **DENIES** Defendants' Motions.

I.  <u>FACTUAL AND PROCEDURAL HISTORY</u>

Defendant Lindeman worked for Plaintiff Revera Inc. ("Revera") from 1999 until his termination in February 2012. (Def.'s Statement of Facts ("SOF") ¶1.) Lindeman was employed

1

as the Senior Vice President of Operations in Revera's Meriden, Connecticut location. (*Id.*) He was primarily responsible for Revera's U.S. Division, which included providing skilled nursing, assisted living, pharmacy, rehabilitation and other ancillary business services to senior citizens. (Compl. ¶13.)

In 2007, Lindeman executed an employment contract with Revera that did not include a non-solicitation clause. (Alito Decl., Ex. K.) On November 8, 2010, Revera had Lindeman sign an addendum to his employment contract. (Pl.'s SOF ¶3.) The addendum included a provision titled "Non-Solicitation of Employee" and read as follows:

> The Executive agrees that during the term of the Executive's employment and for a period of twelve (12) months following the termination of the Executive's employment, for any reason whatsoever, the Executive shall not directly or indirectly <u>employ or retain as an independent contractor any employee of or independent contractor to the Company</u> or influence or try to influence any employee of or independent contractor to the Company to resign his or her employment or engagement with the Company.

(MacDonald Decl. Ex. B) (emphasis in original).

On February 13, 2012, Revera's President and Chief Executive Officer, Jeff Lozon ("Lozon"), terminated Lindeman. (Alito Decl. Ex. M.) In a follow-up termination letter, Lozon "reminded" Lindeman of the 2010 addendum he signed which included the "Non-Solicitation of Employee" provision. (*Id.*)

On April 20, 2012, Care One Management, Inc. ("Care One") offered Lindeman the position of Chief Operating Officer with a May 14, 2012 start date. (Alito Decl., Ex. N.) As Chief Operating Officer, Lindeman would oversee the operations for Care One's New Jersey region. (Def.'s SOF ¶6.) Brian Karstetter ("Karstetter"), Anthony Adinolfi ("Adinolfi"), and Rebecca Resh, Care One's regional directors of operations, reported directly to Lindeman. (Alito Decl., Ex. I, Lugo Dep., 70:19-22.) Both Adinolfi and Karstetter had worked with Lindeman previously

2

at Revera. (Pl.'s Response to Facts ¶ 20.) After approximately three months with Care One, Lindeman left the company on August 13, 2012. (Alito Decl., Ex. A, Lindeman Dep., 213:12-13.)

During Lindeman's employment with Care One, four (4) Revera employees – Pamela Cummings ("Cummings"), Cassidy Bancroft ("Bancroft"), Wendy Weum ("Weum"), and Tina Thomas ("Thomas")[1] – were hired to work for Care One. (Compl. ¶¶21, 27, 32, 36.) During his tenure at Revera, all of these employees reported to Lindeman and worked at the same Revera location with him. (Pl.'s Resp. to Facts ¶ 7.)

On August 1, 2012, Revera filed suit against Lindeman and the Care One Defendants alleging that Lindeman violated the 2010 employment contract addendum that he signed which included the "Non-Solicitation of Employee" provision and that Care One facilitated his violation essentially based on the four hires. (Compl. at 2; *Id.* at ¶¶40-71.) Revera alleges that Lindeman directly or indirectly induced several Revera employees to leave their employment at Revera to work for him at Care One. (*Id.* at ¶43.) The Complaint included the following counts: injunctive relief (Count One); breach of restrictive covenant (Count Two); tortious interference with business relations and prospective economic gain (Count Three); unjust enrichment (Count Four); and violation of the covenants of good faith and fair dealing (Count Five).[2]

Lindeman and the Care One Defendants assert that Lindeman had no involvement in the recruitment process for any of the named ex-Revera employees that are discussed. (Def.'s SOF ¶6.) Care One further claims that Lindeman had no role in, or authority for, recruiting or hiring any employees or preparing terms of offers for potential employees. (*Id.* at ¶8.) Cummings,

---

[1] Thomas never actually worked for Care One. (Def.'s SOF ¶43.) She was offered and accepted a position on July 23, 2012 but rescinded her acceptance on August 30, 2012. (*Id.* at 41; *Id.*)
[2] Revera seeks damages in the amount of $86,000 for recruiting efforts they allegedly spent to replace Cummings, Bancroft, Weum, and Thomas and restitution/rescission for approximately $1.5 million paid to Lindeman as a severance package that Revera claims was in exchange for these obligations. (Pl.'s Opp. 20-21.)

Bancroft, Weum, and Thomas claim that they were actively looking to leave Revera due to issues with their respective superiors before Lindeman started working for Care One. (*Id.* at ¶¶14, 25-26, 37.)

On October 9, 2012, Revera requested that the Clerk enter default against Defendants for failure to appear. (Dkt. No. 8.) On October 10, 2012, default was entered. (Dkt. No. 9.) On October 25, 2012, Care One's counsel wrote a letter requesting an Order Vacating Default against all Defendants. (Dkt. No. 11.) On November 28, 2012, a stipulation and order was entered extending time for Lindeman to answer the Complaint. (Dkt. No. 15.) On November 30, 2012, Lindeman filed his answer to the Complaint. (Dkt. No. 16.) Care One filed its answer on December 28, 2012. (Dkt. No. 18.)

On September 15, 2014, Lindeman and the Care One Defendants filed separate Motions for Summary Judgment. (Dkt. No. 54-55.) On November 14, 2014, Revera filed its Opposition. (Dkt. No. 63.) On December 8, 2014, Lindeman and the Care One Defendants filed their respective Reply Briefs in further support of their Motions. (Dkt. No. 67, 69.)

## II.     LEGAL STANDARD

**Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact

"might affect the outcome of the suit under the governing law." *Id.* at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325).  Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23.

### III. DISCUSSION

As discussed below, genuine issues of material fact exist that preclude summary judgment at this time. The following analysis addresses these issues and the causes of actions raised.

**Injunctive Relief (Count One)**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that [] balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The standard for a permanent injunction is essentially the same as for a preliminary injunction, but plaintiff must actually succeed on the merits rather than show a likelihood of success. *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 539 (1987). "In deciding whether a permanent injunction should be issued, the court must determine if the plaintiff has actually succeeded on the merits..." *CIBA-GEIGY Corp. v. Bolar Pharmaceutical Co., Inc.*, 747 F.2d 844, 850 (3d Cir.1984). This also requires a discussion of irreparable harm. *See eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006); *Ferring Pharm., Inc., v. Watson Pharm., Inc.* 765 F.3d 205 (3d Cir. 2014)(affirming district court's denial of a preliminary injunction).

Here, the Complaint indicates that "Plaintiff seeks judgment on the Complaint against Lindeman and Care One, along with an order granting a one-year permanent injunction prohibiting Lindeman or Care One from hiring employees of Revera, along with reasonable attorney's fees, costs of suit and such other and further relief as the Court deems equitable under the premises." (Compl. ¶ 47.) Plaintiff's opposition does not address the claim for injunctive relief. The employment relationship between Care One Management and Lindeman ended in August 2012. Lindeman left Revera in March 2012. Lindeman's non-solicitation agreement imposed only a one-

year restriction for hiring or soliciting Revera employees to work for another company. However, given the material facts in dispute, summary judgment will not be granted at this time.

**Breach of Restrictive Covenant (Count Two)**

To establish a claim for breach of contract Plaintiff needs to demonstrate: 1) a valid contract exists; 2) breach of contract; and 3) resulting damages. *See RNC Sys., Inc. v. Modern Technologies Group, Inc.*, 861 F.Supp.2d 436, 444-45 (D.N.J. 2012).

Here, there are issues of material fact as to breach of the contract and what the resulting damages, if any, would be. Defendants assert that Lindeman did not play a role in the recruitment or hire of any of the four employees indicated in Plaintiff's Complaint. Defendants also contend that most corporate or management positions are marketed through referrals or word of mouth, and that no none was hired without A. Alberto Lugo's ("Lugo"), Executive Vice President and General Counsel of Defendant Care One Management, LLC, approval. However, all of the ex-Revera employees at issue worked as part of Lindeman's team while he was at Revera. Further, discussions on whether Lindeman could "replica[e] the team culture" of Revera took place during Lindeman's interview process with Care One. (*See* Pl.'s Response to Facts ¶ 5.)

Defendants provide alternative reasons and explanations for the hiring of Cummings, Bancroft, Weum, and Thomas, other than being recruited by Lindeman. For example, as to Cummings the reasons provided include the imposition of more responsibility at Revera, but no increase in pay, being ready for expansion, and not liking Revera's CEO, Jeff Lozon's management style. (*See* Cummings Dep., 31:13-34:8, 39:11-18.) Cummings allegedly reached out to Adinolfi at Care One, whom she used to work with at Revera. (*Id.* at 42:16-43:17.) Cummings was offered employment on April 13, 2012, before Lindeman started at Care One in May 2012 or received his offer on April 20, 2012. (Alito Decl. Exs. O, N.) After an offer and

counteroffer, Cummings eventually left Revera on June 29, 2012, and started with Care One on July 2, 2012. (*See* Cummings Dep. 61:7-18; 67:20-22.) However, initially it appears Cummings was invited to start on the same May 2012 date as Lindeman.

In February 2012, Weum reached out to Karstetter, a former Revera employee who was also at Care One. (*See* Pl.'s Response to Facts ¶ 26.) Bancroft allegedly similarly reached out to Adinolfi for a position with Care One around May 2012. (Bancroft. Dep. 39:13-42:22.) Both Weum and Bancroft indicate that Steve Schaffer's ("Schaffer") management and "harassment" was the reason for their desire to leave Revera. (*See* Alito Decl. C.) Schaffer was terminated in 2013, after both Weum and Bancroft left. (*See* Alito Decl. J.) Notably, both Adinolfi and Karstetter worked with Lindeman previously at Revera, and worked with Lindeman again once he started at Care One. (Pl.'s Response to Facts ¶ 20.)

Thomas allegedly was looking of other employment opportunities for some time and then wanted to leave Revera due to dissatisfaction with Lozon's management style and what she said people referred to as a "hostile work environment." (*See* Alito Decl., Ex. E, Thomas Dep. 54:23-67:3.) In 2012, there was also discussion of restructuring and moving some Revera employees to Canada, which some employees, including Thomas, were unable to do or did not want to do. (See Alito Dep. Ex. D.) Thomas reached out to Lugo at Care One in May 2012. (*Id.* 70:14-73:5.) Plaintiff points out that Thomas revoked her acceptance of a job offer after Lindeman was terminated by Care One, and then Thomas accepted an offer from Aeromed. (*Id.* 102:24-104:21; 117:15-18.) While, Defendant's assert that Thomas only corresponded socially with Lindeman, Plaintiffs emphasize the fact that Lindeman and Thomas now work together at another company.[3]

---

[3] Care One allegedly terminated Lindeman after just a few months, after this lawsuit was filed.

8

Additionally, Revera claims damages of $86,000 in recruiting agency fees to replace former Revera employees; however, there are issues of fact as to whether the employees were induced to leave or not and would have to be replaced regardless of Lindeman's alleged involvement. [4] Thus, summary judgment will not be granted on this count.

**Tortious Interference (Count Three) and Unjust Enrichment (Count Four)**

To establish a claim for tortious interference Plaintiff must prove: 1) a reasonable expectation of economic advantage; 2) interference done intentionally and with malice; 3) a causal connection between the interference and the loss of prospective gain; and 4) actual damages. *See Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739 (1989); *see also Brounstein v. American Cat Franciers Ass'n*, 839 F.Supp. 1100, 1112-13 (D.N.J. 1993); *Coast Cities Truck Sales, Inc. v. Navistar Intern. Transp. Co.*, 912 F.Supp. 747, 771-75 (D.N.J. 1995). Whether there was malice or the alleged conduct went beyond healthy, lawful competition should be determined to see whether there was tortious interference. *See Carpet Group Int'l v. Oriental Rugs Imps. Ass'n*, 256 F. Supp. 2d 249, 299 (D.N.J. 2003).

To establish a claim for unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust. *See VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994); *Eli Lilly & Co. v. Roussel Corp.*, 23 F.Supp.2d 460, 496 (D.N.J.1998) (plaintiff must show that "it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights."); *see also Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987).

---

[4] In June 2012, Revera demanded Lindeman pay them $150,000 for the alleged breach of the non-solicitation agreement. (Schwartz Cert., Ex. K.)

9

In the instant matter, as discussed herein, there remain issues of material fact in dispute that impact several of the factors relating to damages, economic advantage, benefit, malice, and causal connection that also apply to Plaintiff's claims of tortious interference and unjust enrichment. As such, summary judgment will not be granted on these counts.[5]

**Violation of the Covenants of Good Faith and Fair Dealing (Count Five)**

To succeed on a claim for the breach of the covenants of good faith and fair dealing plaintiff must show that the other party "acted in bad faith and engaged in conduct that denied the benefit of the bargain originally intended by the parties." *See Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 225 (2005) (*internal citations omitted*); *see also Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251 (2001).

Lindeman claims that Plaintiff cannot maintain both a claim for breach of contract and a claim for the breach of good faith and fair dealing because Plaintiff would not be entitled to additional damages for breaching an express term. *See generally Wade v. Kessler Inst.*, 343 N.J. Super 338, 348 (App. Div. 2001) (holding that whether a plaintiff could recover damages for a "breach of either an [employment] contract and/or the implied covenant of good faith and fair dealing" go to a jury). However, this count is also not appropriately decided on summary judgment given the circumstances and facts in dispute.

---

[5] Defendant raises arguments related to the economic loss doctrine and the "malice" requirements for the claim of tortious interference; however, as this Court denies summary judgment due to the existing genuine issues of material fact those arguments are not directly addressed herein. The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." *Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 618 (3d Cir.1995).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions are **DENIED**. An order consistent with this opinion follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Magistrate Judge Steven C. Mannion